2026 IL App (1st) 251548-U

No. 1-25-1548

Order filed July 29, 2026

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 4943 |
| | ) | |
| EUGENE BROWN, | ) | Honorable |
| | ) | James Bryan Novy, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Martin and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1     *Held*: The judgment of the trial court summarily dismissing defendant's first-stage petition for postconviction relief is affirmed.

¶ 2     On appeal defendant Eugene Brown challenges the July 1, 2025, summary dismissal of his *pro se* petition for postconviction relief. Among other issues, defendant's petition attacked the performance of trial counsel and appellate counsel on direct appeal, including the claim that trial counsel provided ineffective assistance by failing to present testimony from an eyewitness

identification expert. The trial court held that defendant's petition was frivolous and patently without merit. Defendant now appeals the dismissal of his first stage petition under the Post-Conviction Hearing Act (Act), 725 ILCS 5/122-1 *et seq.* (West 2024).

¶ 3    For the reasons that follow, we affirm the judgment of the trial court.[1]

¶ 4                                              I. BACKGROUND

¶ 5    On June 24, 2021, we affirmed defendant's conviction for attempt first degree murder. *People v. Brown*, 2021 IL App (1st) 191517-U. We briefly recite the evidence from trial for context. Defendant opted for a jury trial, which proceeded simultaneously alongside codefendant Yolanda Neely's bench trial.

¶ 6    Andre Carothers testified that defendant and Neely were his old friends. On October 12, 2017, Carothers was drinking at the home of Latoyce Pinckney, his ex-girlfriend. Carothers left Pinckney's home and walked to the intersection of Whipple Street and Madison Street, where he waited for a ride home. It was dark outside, but there were nearby street lights. While Carothers waited, he was shot by an unknown person. When paramedics arrived, he told them he did not know who shot him. He also denied ever identifying the shooter.

¶ 7    The State confronted Carothers with a previous videotaped statement from November 5, 2017, in which he told officers that he saw a woman named Yoshi, who he knew to be defendant's girlfriend, driving a maroon van approximately five to seven feet away. Defendant was in the passenger seat. The van parked and defendant exited the vehicle and walked toward Carothers. Defendant confronted Carothers about a fight between Yoshi and Pinckney and shot Carothers

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

multiple times from three to four feet away. While Carothers was on the ground, he asked if defendant was going to kill him. Defendant responded, "This, motherf***, this is a hit. You know what it is."

¶ 8 Carothers testified that he did not remember making the videotaped statement. He also identified a surveillance video of him being shot, but was not sure if the video showed the corner where he was shot. He also did not recall lying on the ground or speaking to the paramedics.

¶ 9 On cross-examination, Carothers stated he previously sold narcotics near where he was shot, and that he was drinking the night of the shooting. He also acknowledged that the shooting was fresh in his mind when the paramedics arrived and that he told a paramedic named Jose Val Limbo that he did not know who shot him. He further testified that he was on house arrest at the time of trial due to unrelated charges.

¶ 10 Pinckney testified that around 7 p.m. on October 12, 2017, she and Neely had a fight. Following the fight, she called the police and went home. After midnight, she called a detective and claimed she saw Neely drop defendant off and then saw defendant shoot Carothers. However, she testified that she did not witness the shooting.

¶ 11 She was then confronted with a videotaped interview in which she stated she saw defendant exit a van driven by Neely and shoot Carothers. Pinckney testified that her previous videotaped statement was a lie and that she was intoxicated at the time of the shooting and during the videotaped interview.

¶ 12 Detective Brian Drees testified that Pinckney identified defendant and Neely in a photo array, and that Pinckney circled defendant's picture and wrote, "he did it," next to it. Drees also

testified that he visited Carothers in the hospital on October 19, 2017, and that Carothers told him defendant was the perpetrator.

¶ 13    In his defense, defendant called one of the paramedics who responded to the scene of the shooting. The paramedic testified that, according to his "run sheet" from October 12, 2017, Carothers stated an "unknown person" shot him. He further testified that if defendant had named the shooter, he would have written it down.

¶ 14    The jury found defendant guilty of attempt first degree murder with the discharge of a firearm that caused great bodily harm and aggravated battery with a firearm.

¶ 15    At sentencing, the State presented defendant's prior convictions for aggravated battery of a peace officer, felony driving with a suspended license, unlawful use of a weapon by a felon, and a previous attempt murder conviction. In mitigation, defendant argued that he was 44 years old and was raised mostly by his grandmother following an accident at the age of 5 where defendant set fire to his home. The fire killed defendant's younger brother, and the Presentence Investigation report (PSI) indicated that defendant had since struggled with posttraumatic stress disorder, depression, and bipolar disorder. Defendant dropped out of high school, but later obtained his GED. He had four children, and he maintained regular contact with three of them. In allocution, defendant maintained his innocence.

¶ 16    The trial court recognized that defendant's "childhood was very difficult," but it noted defendant's repeated prior convictions and observed that defendant had "led a violent criminal life." The trial court sentenced defendant to 48 years in prison.

¶ 17    On May 1, 2025, defendant filed a petition for postconviction relief. Relevant to defendant's appeal, among a number of other claims, defendant asserted that he received

ineffective assistance of trial counsel because trial counsel failed to present expert testimony regarding the reliability of eyewitness identification. He also contended that his sentence violates the proportionate penalties clause of the Illinois Constitution and the eighth amendment of the United States Constitution based on *Miller v. Alabama*, 567 U.S. 460 (2012), *Roper v. Simmons*, 543 U.S. 551 (2005), and *Graham v. Florida*, 560 U.S. 48 (2010). Lastly, defendant's petition contained a heading titled, "Claim Eight. Ineffective Assistance of Appellate Counsel." Following this heading is one sentence that read, "Appellate counsel was ineffective for failure to brief and argue all matters of record."

¶ 18    On July 1, 2025, the trial court dismissed defendant's petition as frivolous and patently without merit. Defendant filed a notice of appeal on August 5, 2025.[2]

¶ 19                                   II. ANALYSIS

¶ 20    The Act provides a mechanism by which a defendant may raise a collateral attack against his or her conviction based on a claim of actual innocence or where there was a substantial denial of his or her rights under the Constitution of the United States, the State of Illinois, or both. 725 ILCS 5/122-1 *et seq*. (West 2024). The purpose of postconviction proceedings is to allow inquiry into constitutional issues involved in the original conviction and sentence that have not been, and could not have been, adjudicated previously on appeal. *People v. Buffer*, 2019 IL 122327, ¶ 12. Review of the trial court's dismissal of a postconviction petition is *de novo*, meaning we afford no

---

[2]Defendant's notice of appeal appears to be in substantial compliance with Supreme Court Rule 12(b). Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017); see also *People v. Shunick*, 2024 IL 129244, ¶ 31 (Rule 12(b) requires substantial compliance rather than strict compliance). Defendant's proof of service, addressed to the Clerk of the Circuit Court of Cook County with a full street address, states that it was deposited into the mailbox at Western Illinois Correctional Center on July 28, 2025. That proof of service contains a verification pursuant to section 1-109 of the Code of Civil Procedure. 735 ILCS 5/1-109 (West 2024).

deference to the trial court's decision. *Buffer*, 2019 IL 122327, ¶ 12; *People v. Randall*, 2016 IL App (1st) 143371, ¶ 44.

¶ 21    The Act sets out a three-stage process for the adjudication of post-conviction petitions. *Id*. ¶ 45. At the first stage, the stage pertinent to this case, the trial court is only required to determine whether a petition is "frivolous or patently without merit." 725 ILCS 5/122-2.1(a)(2); *Buffer*, 2019 IL 122327 ¶ 45. A petition is frivolous or patently without merit when it has no arguable basis in law or in fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation. *Id*. An example of an indisputably meritless legal theory is one which is completely contradicted by the record. *Id*. Fanciful factual allegations include those which are fantastic or delusional. *Id*. at 17.

¶ 22    In postconviction proceedings, issues previously raised on direct appeal are barred by *res judicata*, and issues that could have been raised on direct appeal but were not are deemed forfeited. *People v. Haines*, 2021 IL App (4th) 190612, ¶ 18.

¶ 23    A first-stage petition does not have to demonstrate or prove a constitutional violation. *People v. Tate*, 2012 IL 112214, ¶ 19. A *pro se* petitioner is not required to allege facts supporting all elements of a constitutional claim. *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 48. Because a *pro se* petitioner will likely be unaware of the precise legal basis for his claim, the threshold for survival is low, and a *pro se* petitioner need only allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act. *Id*. However, the petition must clearly set forth the respects in which petitioner's constitutional rights were violated. *Id*. Petitions filed

*pro se* must be given a liberal construction and are to be viewed with a lenient eye, allowing borderline cases to proceed. *Id*. But liberal construction does not mean that we distort reality. *Id*.

¶ 24 Criminal defendants are guaranteed the right to the effective assistance of counsel. U.S. Const. amends. VI, XIV; Ill. Const. 1970, art. 1, § 8; *Strickland v. Washington*, 466 U.S. 668, 685 (1984). To sustain a claim of ineffective assistance of counsel, one must show both that trial counsel's performance was deficient, measuring it against an objective standard of competence under prevailing professional norms, and that but for counsel's deficient performance, there was a reasonable probability that the outcome of the case would have been different. *Strickland*, 466 U.S. at 687, 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. at 694. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Id*. at 686. However, at the first stage of a postconviction petition, a defendant need not plead so thoroughly as to prove or demonstrate that he received ineffective assistance of counsel. *Tate*, 2012 IL 112214, ¶ 19. Instead, a petition alleging ineffective assistance of counsel may not be summarily dismissed if: (1) it is arguable that counsel's performance fell below an objective standard of reasonableness and (2) it is arguable that the defendant was prejudiced. *Id*.

¶ 25 Defendant argues that he met his burden at the first stage by claiming that: (1) trial counsel provided ineffective assistance of counsel by failing to call an eyewitness identification expert and appellate counsel provided ineffective assistance by failing to raise the issue on direct appeal and (2) appellate counsel provided ineffective assistance by failing to argue on direct appeal that defendant's sentence was excessive and disproportionate.

¶ 26                          A. Eyewitness Identification Expert

¶ 27     There is no question that eyewitness identification expert testimony is admissible in cases where it is relevant and appropriate. See *People v. Lerma*, 2016 IL 118496, ¶ 26. The bar to survive first stage postconviction proceedings is low, but a defendant must still allege sufficient facts to make out a claim that is arguably constitutional for purposes of invoking the Act.

¶ 28     Defendant concedes that trial counsel's failure on this point was "evident on the record." Taking that assertion at face value, defendant could have raised this issue on direct appeal, and it would be forfeited for the purposes of postconviction proceedings. *People v. Evans*, 186 Ill. 2d 83, 91-92 (1999). Thus, to avoid the forfeiture that would result from his failure to raise this issue on direct appeal, defendant's briefing takes the position that appellate counsel also provided ineffective assistance by failing to raise this argument on direct appeal.

¶ 29     The content of defendant's petition, however, is entirely focused on trial counsel's failures and makes no specific allegation that appellate counsel provided ineffective assistance by failing to raise this claim. As we noted above, defendant's petition sets out a single ineffective assistance of counsel claim that is one sentence long and reads, "Appellate counsel was ineffective for failure to brief and argue all matters of record," with no additional detail.

¶ 30     In postconviction proceedings, any claim of a substantial denial of a constitutional right not raised in an original or amended petition is forfeited. 725 ILCS 5/122-3 (West 2024). We lack the authority to excuse an appellate forfeiture caused by the failure of a litigant to include issues in his or her postconviction petition. *People v. Reed*, 2014 IL (1st) 122610, ¶ 43. Furthermore, broad, unsupported, conclusory allegations are not permitted. *People v. Blair*, 215 Ill. 2d 427, 453 (2005).

¶ 31 There are no factual allegations to make out an arguable case for appellate counsel's ineffectiveness. It is well-established that appellate counsel is not required to raise every conceivable issue on appeal. *People v. Tenner*, 175 Ill. 2d 372, 387 (1997). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id*. (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). Counsel cannot possibly and competently argue every issue imaginable. *Id*. at 388. Page limits and time constraints will both influence appellate counsel's choice of issues, requiring the attorney to exercise judgment in selecting from the potential claims of error that may be asserted on appeal. *Id*.

¶ 32 As we have noted, the threshold for survival at the first stage is low, and a *pro se* petitioner need only allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act. *Thomas*, 2014 IL App (2d) 121001, ¶ 48. But there is still a threshold. Defendant's single conclusory sentence that appellate counsel failed to brief all matters of record fails to set out an arguable basis as to why appellate counsel's decision not to brief this issue constituted ineffective assistance. Even if we accepted the underlying premise that trial counsel was arguably ineffective, appellate counsel is not obligated to raise every conceivable meritorious issue on appeal.

¶ 33 We are required to construe *pro se* petitions liberally. But defendant's petition does not specify that appellate counsel failed to argue this particular claim, let alone allege any facts as to why appellate counsel was ineffective for failing to raise this claim. A petition must "clearly set forth the respects in which [a defendant's] constitutional rights were violated." 725 ILCS 5/122-2 (West 2024). While a defendant must only provide a limited amount of detail in the petition, that

does not mean that a *pro se* petitioner is excused from providing any detail at all regarding the allegation that appellate counsel provided ineffective assistance. *People v. Welling*, 2021 IL App (2d) 170944, ¶ 44. Defendant's conclusory statement that appellate counsel failed to brief all matters of record fails to state a claim that is arguably constitutional in nature.

¶ 34 Accordingly, on this basis the trial court did not err in concluding that defendant's petition was frivolous or patently without merit.

¶ 35 B. Excessive Sentence

¶ 36 Defendant next contends that his petition set forth an arguable claim that he was denied effective representation from appellate counsel because appellate counsel should have challenged his sentence as excessive and disproportionate. However, this claim fails for the same reasoning as the first.

¶ 37 Defendant's petition contains only the conclusory assertion that "Appellate counsel was ineffective for failure to brief and argue all matters of record." His petition provides no specific claim that appellate counsel failed to raise any sentencing issues on direct appeal, nor does it contain any factual assertions that set out an arguable basis that appellate counsel's decision not to raise a sentencing claim on direct appeal constituted ineffective assistance. Broad, conclusory allegations are not permitted. *Blair*, 215 Ill. 2d at 453. Petitions must be given a liberal construction. *Thomas*, 2014 IL App (2d) 121001, ¶ 48. But we cannot give a liberal construction to nonexistent claims or factual allegations.

¶ 38 Accordingly, the trial court did not err in concluding that defendant's petition was frivolous or patently without merit.

¶ 39                                    III. CONCLUSION

¶ 40    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 41    Affirmed.